UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HEATHER R. ERES, individually,
as Personal Representative of the Estate
of KEVIN D. BRYANT, deceased,
and as assignee of ELI VILLAREAL
a/k/a ELI VILLAREAL ALVAREZ,

    Plaintiff,

v.                                                         Case No. 8:17-cv-2354-T-60SPF

PROGRESSIVE AMERICAN
INSURANCE COMPANY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This cause comes before the Court for consideration of the following: (1) Plaintiff's Amended Motion for Partial Summary Judgment (Doc. 110); Plaintiff's Amended Statement of Undisputed Facts (Doc. 111); Defendant's Response in Opposition to Plaintiff's Amended Motion for Partial Summary Judgment (Doc. 116); Defendant's Amended Motion for Summary Judgment (Doc. 114); Defendant's Amended Statement of Undisputed Facts in Support of Its Motion for Summary Judgment (Doc. 113); Plaintiff's Opposition to Defendant's Amended Motion for Summary Judgment (Doc. 117); Defendant's Reply to Plaintiff's Opposition (Doc. 120); Defendant's Supplemental Authority in Support of Its Amended Motion for Summary Judgment (Doc. 122); and Defendant's Supplemental Support of Its Amended Motion for Summary Judgment (Doc. 124). For the reasons stated below, it is recommended that Plaintiff's Amended Motion for Partial Summary Judgment (Doc. 110) be denied, and Defendant's Amended Motion for Summary Judgment (Doc. 114)

be granted.

## I.     RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

This is a third-party bad faith action brought by Plaintiff, Heather R. Eres, individually and as Personal Representative of the Estate of Kevin D. Bryant ("Estate"), and as assignee of Eli Villareal. Plaintiff alleges that Defendant acted in bad faith in the handling of the bodily injury claims against its insured, Villareal, arising from a May 10, 2007 automobile accident (the "Underlying Claim").

The material facts are not in dispute. On May 10, 2007, Plaintiff's vehicle was stopped at a railroad crossing gate when Villareal rear-ended Plaintiff's vehicle (Doc. 113 at ¶ 1). The impact drove Plaintiff's vehicle into a passing train (Doc. 113 at ¶ 1). Plaintiff's 8-year-old son, Kevin D. Bryant ("Bryant"), was killed in the accident, and Plaintiff suffered serious and permanent injuries (Doc. 113 at ¶ 1).

At the time of the accident, Villareal was insured by Defendant under an auto liability policy that provided bodily injury ("BI") coverage limits of $10,000 per person and $20,000 per occurrence (Doc. 111 at ¶ 2). On May 14, 2007, Defendant was notified of the accident and learned that attorney Frank Morse represented Plaintiff (Doc. 113 at ¶ 3). That same day, Defendant assigned examiner Robert Ritchie to handle the claim (Doc. 113 at ¶ 4) and determined that, based on Plaintiff's reported injuries and the death of Bryant, it should tender the full BI policy limits to Plaintiff and the Estate, *i.e.*, $10,000 to each, totaling $20,000 (Doc. 111 at ¶ 3; Doc. 113 at ¶ 6).

In speaking with Morse's office on the following day, Ritchie was advised that Bryant's father was in the picture but was not in a current relationship with Plaintiff (Doc. 113 at ¶ 8). Morse's office also advised that they were unaware of whether an estate would be set up as

2

the only likely assets were the proceeds from Villareal's BI policy with Defendant (Doc. 113 at ¶ 8). Finally, Ritchie was advised that Morse would contact Ritchie and send a letter of representation (Doc. 113 at ¶ 8). Later that same day, Ritchie informed Morse that Defendant stood willing and ready to tender the full $20,000 BI policy limit to Plaintiff and the Estate (Doc. 113 at ¶ 10). Morse, however, requested that Defendant not send the checks and advised that he may not represent the Estate due to a potential conflict with Bryant's father (Doc. 113 at ¶ 10).

In the months that followed, there was uncertainty as to who would represent the Estate, Morse or the law firm of Kinney, Fernandez & Boire, P.A. (the "Fernandez firm") (Doc. 113 at ¶¶ 20, 23, 25, 26, 27, 29). In addition, the handling of the claims was transferred two successive times to two subsequent examiners after Ritchie (Doc. 113 at ¶¶ 34, 40). It is undisputed that, during this time period, Defendant consistently reached out to Morse and the Fernandez firm and attempted to tender the BI policy limits to Plaintiff and the Estate on numerous occasions (*see* Doc. 113 at ¶¶ 16, 17, 21, 26, 27, 29, 33, 34, 38, 39, 41). These tenders were not accepted for various reasons, including Bryant's surviving parents being at odds with one another with resulting uncertainty as to who was representing the Estate, and Morse wanting to wait to settle until after completion of his investigation and after the resolution of Villareal's criminal case (Doc. 113 at ¶¶ 10, 26, 28, 30, 31, 37, 38).

On March 25, 2009, Defendant was notified that Villareal changed his plea to guilty and was sentenced to twelve years in state prison on February 19, 2009 (Doc. 113 at ¶ 42). On that same day, Defendant's examiner contacted Morse's office and spoke with "Lisa" who advised she believed Morse no longer represented Plaintiff, but she or Morse would call the examiner back (Doc. 113 at ¶ 42).

Also on March 25, 2009, Defendant received a letter dated March 19, 2009 from attorney Peter Macaluso, which stated in pertinent part:

> My law firm has the privilege of representing Ms. Heather Eres and the Estate of Kevin Bryant, Jr. in an effort to determine paternity and child support issues. While discussing these matters with her, she brought to my attention that there was a potential claim against your insured arising out of the tragic death of her son, Kevin Bryant, Jr. She has asked hat [sic] I try to resolve this matter on her behalf as well. From discussing the matter with her, she indicated that she had a lawyer who no longer represents her, but that he told her your insured had $20,000 of coverage…. Therefore, if you would be so kind, I would request that you provide me with all of the information required by Florida Statute 627.4137 … along with an affidavit from your insured or his agent that the coverage that you provide is the only coverage that governs this claim. In addition, Ms. Eres is very distraught that some items of great sentimental value were lost in the accident. These include the following: gold chain and cross belonging to her son ($100), and his X-Box ($550), for a total conservative value of $650.00.
>
> I understand that you have paid Ms. Eres for the total loss of her vehicle, but I do not believe that you paid for the loss of her son's belongings. My clients would appreciate being reimbursed for the loss of those belongings.
>
> My clients would like to settle these matters before the Easter weekend. Therefore in an effort to resolve this matter amicably, my clients have authorized me to offer to you to resolve all of their matters with you. If you will provide me the information and payments set forth above by Good Friday (Friday before Easter),[1] my clients will resolve all of their claims including BI claims for the payments as set forth above along with all applicable policy limits. The check must be made payable to the Law Office of Peter Macaluso, P.A. fbo the estate of Kevin Bryant, Jr. and Heather Eres individually…. In exchange for the above, my clients, including the estate, have agreed to sign a general release of all claims against your insured. Because this claim is only against your insured my clients are unwilling to sign a release which releases anyone or any entity other than your insured. **Also my clients agree to satisfy all valid liens out of the proceeds of the settlement. However, my clients cannot agree to a release which has a hold harmless or indemnity agreement in it. Please understand providing us with any release containing anyone or any entity other than the insured, or a hold harmless indemnity agreement, would act as a rejection of this good faith offer to settle this matter.**

(Doc. 7-1; Doc. 111 at ¶ 4) (emphasis added).

---

[1] April 10, 2009.

On April 8, 2009, two days prior to the expiration of the settlement offer, Defendant responded by sending Macaluso the policy disclosures pursuant to Florida Statute § 627.4137, issuing payment for the full $20,000 BI policy limits pursuant to Macaluso's instructions, issuing payment for the $650 excess property damage claim, providing two proposed releases that did not contain the terms "hold harmless" or "indemnification," providing an affidavit from Villareal's insurance agent Scott Black, and providing a faxed copy of the affidavit from Villareal (Doc. 113 at ¶ 57; Doc. 114-2 at p. 58, ln. 7-p. 62, ln. 5 & p. 65, lns. 11-15). Defendant's letter in response to the settlement offer specifically advised, in pertinent part:

> Our proposed releases are enclosed naming only Eli Villareal Alvarez. We understand you are in the process of setting up an Estate and Ms. Eres will likely be named Personal Representative. **Please notify me if you require changes to either release.**
> . . .
> **We believe that we have complied with all the requests outlined in your letter. Please notify us if there is any additional information needed to resolve these claims.**

(Doc. 113 at ¶ 57; Doc. 113-38) (emphasis added).

On April 9, 2009, Defendant sent Macaluso a letter that enclosed Villareal's original signed affidavit of insurance coverage (Doc. 113-39). The letter stated, "I believe that my client and Progressive have satisfied all conditions of your demand at this time. If you disagree and require anything further, please advise immediately **so that I may work diligently to timely address the issue**." (Doc. 113-39, 113-37 at p. 38, lns. 1-12) (emphasis added).

On April 14, 2009, after expiration of the settlement offer, Macaluso sent Defendant a letter, which stated, in pertinent part:

> I recognize that Progressive seemed on the surface to accept and comply with many of the requests that were made on behalf of my client. That's why I am puzzled and saddened that Progressive chose to send a release containing a

5

> hold harmless agreement when I had specifically written that a condition to settle the case was that Progressive would not attempt to provide my clients with a release containing a hold harmless or an indemnity agreement. I indicated that I required strict compliance with my offer in order to resolve the matter amicably. Despite this requirement you provided me a release which would have released your insured for all claims (not merely my client's claims) including but not limited to past, present or future claims for subrogation arising out of the above referenced accident.… I indicated to you in my good faith demand that providing a release containing a hold harmless or indemnity agreement would act as a rejection of our good faith offer. Why Progressive chose to do so is a mystery to me. However, as indicated, doing so acted as a rejection of my client's good faith offer.
>
> I have relayed your rejection and counter-offer to my client and she is not willing to accept the terms of your counter-offer. Therefore your counter offer to resolve this matter is rejected. I am now forced to bring a claim on behalf of my client against your insured.

(Doc. 113-40).

On April 22, 2009, Defendant responded to Macaluso's April 14, 2009 letter and stated:

> We take issue with your assertion that the proposed releases provided along with our April 8, 2009 tender to your client in some way contained hold harmless or indemnity requirements, or in any way would obligate your client to release claims of third parties.… I would further remind you that our tender letter of April 8, 2009 specifically indicated that our releases were "proposed" and requested that you "Please notify me if you require changes to either release."
>
> It is, has been, and continues to be our desire to resolve these claims with your clients. If you are, for whatever reason, uncomfortable having your clients execute releases containing the wording "… including, but not limited to, past, present, or future claims for subrogation arising out of the above-referenced accident", **feel free to strike it from the releases**.
>
> Please feel free to contact me should you wish to discuss this matter further. Looking forward to your reply.

(Doc. 113-41) (emphasis added).

On or about May 8, 2009, Plaintiff then filed a lawsuit against Villareal in state court (the "Underlying Lawsuit") (Doc. 113 at ¶ 61). On October 31, 2011, following a jury trial,

6

a final judgment was entered against Defendant's insured, Villareal, in the amount of $10,203,909.73 (Doc. 1-2 at 37-39). On September 18, 2013, the Second District Court of Appeal affirmed the judgment against Villareal. *See Villareal v. Eres*, 128 So.3d 93 (Fla. 2d DCA 2013). The issue on appeal was whether Plaintiff's offer to settle for Villareal's policy limits was accepted by Defendant, resulting in a binding settlement prior to the institution of the Underlying Lawsuit. Defendant argued that it had accepted Plaintiff's settlement offer. The Second District held that Defendant's proposed releases included language in the nature of a hold harmless or an indemnification agreement and, as such, acted as a rejection of Plaintiff's settlement offer. *Id.* at 99-100 n. 4.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate if all the pleadings, discovery, affidavits, and disclosure materials on file show that there is no genuine disputed issue of material fact, and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a) and (c). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). A fact is material if it is a legal element of the claim that may affect the outcome of the suit under the substantive governing law. *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir. 1997). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could find for the non-moving party. *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, the court must view the evidence and all factual inferences drawn therefrom in the light most favorable to the non-

moving party and must resolve any reasonable doubts in the non-movant's favor. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007).

The non-moving party, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the non-movant must go beyond the pleadings and "identify affirmative evidence" that creates a genuine dispute of material fact. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998). "[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England,* 432 F.3d 1321, 1326 (11th Cir. 2005) (citing *Bald Mtn. Park, Ltd. v. Oliver,* 836 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson,* 477 U.S. at 252).

### III.   DISCUSSION

Florida law recognizes third-party bad faith actions brought by the injured third party against the insured's liability carrier. *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, 94 So.3d 541, 545 (Fla. 2012); *Macola v. Gov't Emps. Ins. Co.*, 953 So.2d 451, 455 (Fla. 2006).[2] The Florida Supreme Court has elaborated that the difference between first-party and third-party bad faith causes of action is "a third-party bad faith cause of action arises when the insurer fails to act in good faith in handling a claim brought by a third party against an insured, whereas a first-party bad faith cause of action arises when an insurer fails to act in good faith

---

[2] In diversity cases, such as this, the substantive law of the forum state applies. *Bravo v. United States*, 577 F.3d 1324, 1325 (11th Cir. 2009).

8

in the processing of the insured's own first-party claim." *Macola*, 953 So.2d at 457. The basis for the claim, however, remains the insurer's duty of good faith to the insured, not any duty of the insurer to the third party. *Id.* at 455 (quoting *Fidelity & Cas. Co. v. Cope,* 462 So. 2d 459, 461 (Fla. 1985)).

Florida's bad faith law is "designed to protect insureds who have paid their premiums and who have fulfilled their contractual obligations by cooperating fully with the insurer in the resolution of claims." *Berges v. Infinity Ins. Co.*, 896 So.2d 665, 682 (Fla. 2004). "[T]he critical inquiry in a bad faith [case] is whether the insurer diligently, and with the same haste and precision as if it were in the insured's shoes, worked on the insured's behalf to avoid an excess judgment." *Harvey v. GEICO Gen. Ins. Co.*, 259 So.3d 1, 7 (Fla. 2018). An insurer is obligated "to act in good faith in the investigation, handling, and settling of claims brought against the insured." *Berges*, 896 So.2d at 682-83. This good faith duty requires "the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same." *Boston Old Colony Ins. Co. v. Gutierrez*, 386 So.2d 783, 785 (Fla. 1980).

Whether an insurer acted in bad faith is determined under a "totality of the circumstances" standard. *Harvey*, 259 So.3d at 7 (quoting *Berges*, 896 So.2d at 680). While relevant to the question of good faith, "negligence is not the standard." *Id.* at 9. Thus, "a cause of action based solely on negligence which does not rise to the level of bad faith does not lie." *DeLaune v. Liberty Mut. Ins. Co.*, 314 So.2d 601, 603 (Fla. 4th DCA 1975); *see also*

*Barnard v. GEICO Gen. Ins. Co.*, 448 F. App'x 940, 943-44 (11th Cir. 2011).[3] Moreover, the focus of a bad faith action is on the actions "of the insurer in fulfilling its obligations to the insured" and not on the actions of the claimant. *Harvey*, 259 So.3d at 7 (quoting *Berges*, 896 So.2d at 677). "Although determining whether an insurer acted in bad faith is generally a question for the jury, courts applying Florida law have granted summary judgment if the undisputed facts would not allow any reasonable jury to conclude the defendant breached its duty of good faith." *Martin v. Allstate Prop. & Cas. Ins. Co.,* No. 19-11164, 2019 WL 6713436, at *4 (11th Cir. Dec. 10, 2019) ("*Martin II*") (citing *Clauss v. Fortune Ins. Co.*, 523 So.2d 1177, 1178 (Fla. 5th DCA 1988); *Berges*, 896 So.2d at 680).

### A. Plaintiff's Amended Motion for Partial Summary Judgment

Plaintiff moves for partial summary judgment asserting that she is entitled to a finding that Defendant could have settled Plaintiff's claims against Villareal had it accepted the terms of her March 19, 2009 settlement offer (Doc. 110 at 1). Plaintiff also argues that Defendant should be barred, based on binding rulings on these issues, from raising any defense that it complied with the terms of Plaintiff's offer or challenging whether Plaintiff's claims could have settled within the policy's limits (Doc. 110 at 1). These arguments, for the most part, are part and parcel of the Court's analysis of Defendant's Amended Motion for Summary Judgment below. To the extent Plaintiff argues that the Second District Court's ruling has a collateral estoppel effect in this action, it does not.

"Collateral estoppel applies if: '1) an identical issue; 2) has been fully litigated; 3) by the same parties or their privies, and 4) a final decision has been rendered by a court of

---

[3] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

competent jurisdiction.'" *Martin v. Allstate Prop. & Cas. Ins. Co.*, 8:17-cv-3056-02CPT, 2019 WL 1003166, at *6 (M.D. Fla. Mar. 1, 2019) ("*Martin I*") (quoting *Gilliard v. Athena Funding Grp., Inc.*, No. 8:11-cv-1563-T-17EAJ, 2013 WL 877104, at *5 (M.D. Fla. Mar. 8, 2013)), *aff'd* No. 19-11164, 2019 WL 6713436 (11th Cir. Dec. 10, 2019) ("*Martin II*"). The Second District Court of Appeal considered whether Defendant's response, including the language at issue in the proposed releases, constituted an acceptance of Plaintiff's settlement offer. The Second District Court of Appeal found it did not. *Villareal*, 128 So.3d at 100. The appeal, however, did not consider whether Defendant acted in bad faith. As such, the doctrine of collateral estoppel does not apply to the issue before this Court: whether Defendant "fail[ed] to settle a claim when, under all circumstances, it could and should have done so, had it acted fairly and honestly toward [its insured] and with due regard for [his] interests." Fla. Standard Jury Instruction 404.4, Insurer's Bad Faith (Failure to Settle), *available at* https://jury.flcourts.org/civil-jury-instructions-home/civil-instructions/#404 (last visited Jan. 8, 2020); *see, e.g., Martin I*, 2019 WL 1003166, at *6. As such, Defendant is not precluded from arguing that it attempted to accept, and believed it had accepted, Plaintiff's offer. *See Kincaid v. Allstate Prop. & Cas. Ins. Co.*, No. 13-14030, 2014 WL 2048281, at * 5 (S.D. Fla. Jan. 3, 2014) (rejecting plaintiff's argument that the insurer was collaterally and equitably estopped from arguing that it could not settle the underlying claim within the policy limits and distinguishing the question of settlement based purely in contract law from the question of bad faith based on a subjective evaluation of the evidence given the totality of the circumstances), *aff'd sub nom*, 573 F. App'x 858 (11th Cir. 2014). Accordingly, Plaintiff's Amended Motion for Partial Summary Judgment should be denied.

## B. Defendant's Amended Motion for Summary Judgment

Defendant seeks summary judgment, arguing that no reasonable jury could find that it acted in bad faith. Plaintiff asserts that Defendant's motion should be denied because Defendant's failure to exercise reasonable care and diligence in handling Plaintiff's claims is a disputed issue of fact for determination by the jury.

Here, the undisputed facts show that no reasonable jury could find that Defendant acted in bad faith. Defendant offered to tender the policy limits within five days of the accident (Doc. 113 at ¶ 10) and then proceeded to attempt to settle Plaintiff's claims for almost two years. When Plaintiff's counsel made a settlement offer on March 19, 2009, Defendant acted expeditiously and worked diligently with its insured to obtain all the documents and information requested by the April 10 deadline. Defendant believed it had complied with Plaintiff's request regarding the proposed releases as evidenced by correspondence between the parties and the fact that the proposed releases did not use the terms "hold harmless" or "indemnification." Defendant expressed to Plaintiff its belief that it had complied with all the requests outlined in Plaintiff's settlement offer letter. In addition, Defendant's April 8 letter in response to Plaintiff's offer clearly requested Plaintiff to notify Defendant if she required changes to either release. The following day, on April 9, 2009, when Defendant sent Macaluso a letter that enclosed Villareal's original affidavit of insurance coverage, Defendant reiterated "that my client and Progressive have satisfied all conditions of your demand at this time. If you disagree and require anything further, please advise immediately so that I may work diligently to timely address the issue" (Doc. 113-39, 113-37 at p. 38, lns. 1-12). Finally, when Plaintiff's attorney rejected the language in the proposed releases, Defendant expressed its disagreement with Plaintiff's assertion that the releases contained a hold harmless or

indemnification agreement but still invited Plaintiff to strike through the wording in question. Plaintiff's attorney did not respond to that invitation but instead filed suit over two weeks later. Considering the totality of the circumstances, Defendant acted with good faith and with due regards for the interests of its insured. *See Cardenas v. Geico Cas. Co.*, 760 F. Supp. 2d 1305, 1310 (M.D. Fla. 2011) (granting summary judgment in favor of insurer finding insured could not "rely on some supposed defect in [insurer's] proposed release" to demonstrate bad faith considering the totality of the circumstances); *Losat v. Geico Cas. Co.*, No. 8:10-cv-1564-T-17TGW, 2011 WL 5834689 (M.D. Fla. Nov. 21, 2011) (granting summary judgment in favor of insurer in bad faith action despite the insurer not meeting the specified requirements of claimant's settlement offer); *Kincaid*, 2014 WL 2048281 (granting summary judgment in favor of insurer in bad faith action despite the insurer failing to meet the claimant's demand by making a counter-offer); *Hayas v. Geico Gen. Ins. Co.*, No. 8:13-cv-1432-T-33AEP, 2014 WL 6883131 (M.D. Fla. Dec. 5, 2014) (granting summary judgment in favor of insurer in bad faith action despite the insurer making a counter-offer to claimant's express settlement demand that the release not contain a hold harmless or indemnity agreement).

Plaintiff's singular focus on the inclusion of hold harmless or indemnification language in the proposed releases as evidence of bad faith is unavailing.[4] Even though inclusion of this language was eventually construed by the Second District Court of Appeal as being "in the

---

[4] Unlike many bad faith actions, Defendant's communication with Villarreal is not material to the determination of whether Defendant acted in bad faith as a matter of law as it was not a reason for the claim not settling. Defendant advised Villareal of the possibility of a lawsuit, the possibility of a judgment in excess of the BI limits, and of his right to retain personal counsel to protect his interest in excess of the policy limits (Doc. 113-11; 113-2 at 21; 113-1 at p.46, ln. 8-p.48, ln. 21). *See Boston Old Colony*, 386 So.2d at 785. Moreover, when Defendant received Macaluso's March 19 offer, it retained counsel, the law firm of Reynolds, Stowell & Parrino (the "Reynolds law firm"), to represent Villareal and assist in the response to the offer (*see* Doc. 113 at ¶ 45).

nature of a hold harmless or indemnification agreement" such that it was not an acceptance of Plaintiff's offer under Florida contract law, the totality of the evidence still belies a finding of bad faith given Defendant's actions. *See Martin II,* 2019 WL 6713436, at *5 (finding that even if the insurer's proposed release language varied from claimant's instructions such that it was not an acceptance of his settlement offer under Florida contract law, the totality of the evidence did not support a finding of bad faith given the insurer's actions). Similar to the considerations noted by the Eleventh Circuit in *Martin II*, Defendant was responsive to Plaintiff's March 19 offer, clearly complied with every other condition of the offer, believed that the release language complied with the March 19 offer (but still made clear the release could be altered), and offered to strike the offending language immediately after Plaintiff objected to it. *See id.* In fact, the language at issue was construed by the Second District Court of Appeal to be "in the nature of" a hold harmless or indemnification agreement some four years after Macaluso rejected Defendant's response to his March 19 settlement offer. Defendant argues, and Plaintiff does not contest, that the law was unsettled in April 2009 as to whether the subrogation clause in Defendant's proposed releases could be construed as hold harmless or indemnification language (Doc. 114 at 23 n. 12).[5] *See, e.g., Vest v. Travelers Ins. Co.*, 753 So.2d 1270, 1275 (Fla. 2000) ("The insurer has a right to deny claims that it in good faith believes are not owed on a policy. Even when it is later determined by a court or

---

[5] Following the resolution of the Underlying Lawsuit, Villareal sued the Reynolds law firm and two of their attorneys, Katherine Shadwick and Randy Stowell, for legal malpractice. *See* Doc. 62; *Villareal v. Reynolds, Parrino, Spano & Shadwick*, Case No. 2015-CA-3852, in the Sixth Judicial Circuit in and for Pasco County, Florida. The trial court granted summary judgment in favor of Shadwick, Stowell, and the Reynolds law firm finding, in pertinent part, that the law was unsettled in April 2009 as to whether the subrogation clause in Defendant's proposed releases could be construed as hold harmless or indemnification language (Docs. 62, 62-1, 62-2). The Second District Court of Appeal affirmed the trial court's summary judgment (Doc. 62-3).

arbitration that the insurer's denial was mistaken, there is no cause of action if the denial was in good faith.").

Moreover, this is not a case where the insurer required an overbroad release or other overreaching terms in order to settle. *See Martin II,* 2019 WL 6713436, at *5 (comparing *United Auto Ins. Co. v. Estate of Levine*, 87 So.3d 782, 784, 787 (Fla. 3d DCA 20011) (requiring an overbroad release to settle)); *see also Martin I*, 2019 WL 1003166, at *9 (comparing *Otaola v. Cusano's Italian Bakery*, 103 So.2d 993, 997 (Fla. 3d DCA 2012)). Indeed, the undisputed material facts demonstrate that Defendant acted promptly, diligently, and with due concern for its insured's best interest and complied with its good faith obligations. As such, no reasonable jury could find that Defendant acted in bad faith, and Defendant's Amended Motion for Summary Judgment should be granted.

Accordingly, for the reasons stated above, it is hereby **RECOMMENDED**:

1. Plaintiff's Amended Motion for Partial Summary Judgment (Doc. 110) be denied.
2. Defendant's Amended Motion for Summary Judgment (Doc. 114) be granted.

**IT IS SO REPORTED** in Tampa, Florida, this 9th day of January 2020.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to the proposed findings and recommendations or request an extension of time to do so. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. Failure of any party to timely object in accordance with the provisions of § 636(b)(1) waives that party's right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1.


cc:     Hon. Thomas P. Barber